**Marvin Dewayne SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–94–00942–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 10, 1997.

Scott R. Shearer, Houston, for appellant.

Ernest Davilia, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Marvin Dewayne Smith, was found guilty at a trial before the court of the felony offense of carrying a handgun on premises licensed to sell alcohol. TEX. PENAL CODE § 46.02(c) (Vernon 1994).[1] The court found two enhancement paragraphs to be true, and assessed punishment at twenty-five years confinement in the Texas Department of Criminal Justice, Institutional Division. In three points of error, appellant claims the trial court erred in entering an affirmative finding of a deadly weapon and in overruling his motion to suppress. We affirm as modified.

### Background

On April 8, 1994, Agents Dan Young and William Faulkner of the Texas Alcoholic Beverage Commission (TABC), set up surveillance at the Chung Sun Mart on Cullen Boulevard in Harris County. Officer Young had received information that people had been consuming alcoholic beverages on the premises of the store, which was only licensed to sell beverages to go, in violation of the Texas Alcoholic Beverage Code. At about 9:45 p.m., the officers observed a maroon Ford Taurus pull up to the store. The three male occupants of the vehicle, which included the appellant, entered the store, then returned to their car and began unloading twelve packs of beer from the trunk. The men carried the beer from the trunk into the store. Believing that the licensed premises owner was attempting to purchase beer from an unauthorized source in violation of the Texas Alcoholic Beverage Code, the officers decided to enter the store.

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. See Acts 1993, 73rd Leg., Ch. 900, § 1.01. Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

Upon entering the store, the officers saw appellant walk out of the storeroom. He proceeded toward Officer Young with his hand in the front of his pants. Young identified himself and requested to see appellant's identification. Appellant became nervous and stepped behind a display rack. Young saw appellant make shoulder movements that indicated he was trying to pull something out of the front of his pants. Young looked behind the display rack and saw appellant holding a gun. Young pulled out his service revolver and ordered appellant to "freeze." Appellant dropped the gun on the floor and kicked it away. Young handcuffed the appellant and retrieved the gun.

### Points of Error One and Two

■ In his first point of error, appellant contends the trial court erred when it entered an affirmative deadly weapon finding [2] in a simple possession case.

Appellant was convicted for the felony offense of carrying a handgun on a premises licensed to sell alcoholic beverages in violation of TEX. PENAL CODE ANN. § 46.02, which provides as follows:

(a) A person commits an offense if he intentionally, knowingly, or recklessly *carries on or about his person* a handgun, illegal knife, or club.

(b) Except as provided in Subsection (c), an offense under this section is a Class A misdemeanor.

(c) An offense under this section is a felony of the third degree if it occurs on any premises licensed or issued a permit by this State for the sale or service of alcoholic beverages.

(emphasis added).

An affirmative deadly weapon finding may be made where it is shown that a deadly weapon "was *used or exhibited during the commission of a felony offense* ... and that the defendant *used or exhibited* the deadly weapon...." TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g (a)(2) (Vernon 1989)(emphasis added). An affirmative deadly weapon finding will not be supported where the crime is mere possession, as opposed to possession that facilitates the commission of a separate and distinct felony. *Narron v. State*, 835 S.W.2d 642 (Tex.Crim.App.1992); *Ex Parte Petty*, 833 S.W.2d 145 (Tex.Crim.App.1992). In *Narron* and *Petty*, the defendants were charged with unlawful possession of a deadly weapon. They were found guilty of simple possession, and the trial courts entered affirmative deadly weapon findings. The Court of Criminal Appeals found that, because the weapons were not used to facilitate the associated felony, the affirmative deadly weapon findings were erroneous:

> This court has interpreted "use" of a deadly weapon in the context of Article 42.12 § 3g (a)(2), V.A.A.C.P. to include simple possession if such possession facilitates the *associated* felony. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Cr.App.1989). Therefore, in order to "use" a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from "mere" possession. *See* Article 42.12 § 3g (a)(2) and *Patterson, supra*.

*Narron*, 835 S.W.2d at 644 (emphasis in original); *Ex Parte Petty*, 833 S.W.2d at 145 (emphasis in original).

The State claims the Court of Criminal Appeals implicitly overruled this line of cases in *Hooks v. State*, 860 S.W.2d 110 (Tex.Crim.App.1993). There, the defendant was charged with aggravated assault by threat with a deadly weapon, to-wit: a firearm. *Id.* at 111. Although the trial court did not enter an affirmative deadly weapon finding, the Court noted that the evidence would have supported such a finding. *Id.* at 113–14. Because the crime in *Hooks* (aggravated assault by threat) would have been a misdemeanor (assault by threat) but for the use of a deadly weapon, the State claims, the deadly weapon was not used to facilitate the commission of an associated *felony* as described in *Narron* and *Petty*. The Court's indication that entry of an affirmative deadly weapon finding would have been proper leads the

---

2. An affirmative deadly weapon finding affects a defendant's eligibility for community supervision and parole. TEX.CODE CRIM. PROC. ANN. art. 42.18 § 8(b)(3).

State to conclude that *Hooks* implicitly overrules *Narron* and *Petty*. We disagree.

In *Hooks,* the deadly weapon was used or exhibited in the commission of aggravated assault, an associated felony. The fact that use or exhibition of the gun was also an aggravating element of the offense is immaterial for purposes of the affirmative finding because the weapon was used to facilitate the felony. The present case is distinguishable because the gravaman of the offense is the mere carrying of a weapon with no associated felony. In other words, the felony for which appellant was convicted (carrying a handgun on premises licensed to sell alcohol) would have been a misdemeanor (carrying a handgun) but for the appellant being on premises licensed to sell alcohol. TEX. PENAL CODE ANN. § 46.02(a). Being on premises licensed to sell alcohol is not itself an offense, therefore mere carrying of the weapon cannot have been used to facilitate commission of an associated felony. The statute itself provides that an affirmative deadly weapon finding can only be made when the weapon is shown to have been "used or exhibited during the commission of a *felony offense*...." TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g (a)(2) (emphasis added).

In *Tyra v. State,* 897 S.W.2d 796, 798 (Tex.Crim.App.1995), the Court reaffirmed its holding in *Narron* and *Ex Parte Petty:*

> ... we observed in *Narron* and *Petty* that possession of a weapon to facilitate a felony ... constitutes the use of that weapon, whereas mere possession of the weapon without putting it to any use or purpose whatsoever does not. Accordingly, we held that a deadly weapon is not necessarily used or exhibited during the commission of offenses such as the possession of a firearm by a felon merely because the thing possessed is actually a deadly weapon.
>
> Our opinions in *Narron* and *Petty* thus evince a recognition by this Court that, as a matter of semantics, the phrase "used or exhibited a deadly weapon" does not mean the same thing, or merely the same thing, in ordinary English as "possessed a deadly weapon." They do not stand for the proposition that the phrase "used or exhibited a

deadly weapon during the commission of a felony offense" necessarily means used or exhibited a deadly weapon during the commission of an offense which does not otherwise require the use or exhibition of a deadly weapon.

*Id.* Thus, the State's contention that *Hooks* implicitly overruled *Narron* and *Petty* is without merit.

Appellant was convicted of possessing a handgun on premises licensed to sell alcoholic beverages in violation of Texas Penal Code § 46.02(c). Because there was no associated felony to the possession charge, the trial court erred in entering an affirmative deadly weapon finding. Accordingly, we sustain appellant's first point of error and modify the judgment to delete the affirmative finding. Because we have deleted the affirmative finding, we need not address appellant's second point of error challenging the sufficiency of the evidence to support the affirmative finding.

### Point of Error Three

In his third point of error, appellant contends the trial court erred in denying his motion to suppress because the gun was seized as the product of an unlawful detention.

In reviewing a motion to suppress, we do not engage in our own factual review but merely decide whether the trial court's findings are supported by the record and whether the court properly applied the law to the facts. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We view the evidence in the light most favorable to the trial court's ruling. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992); *State v. Hamlin,* 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). We reverse a trial court's suppression ruling only if the court clearly abused its discretion. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App. 1993); *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991). Absent a clear abuse of discretion, the trial court's ruling on admissibility of evidence should not be disturbed. *Arroyo v. State,* 881 S.W.2d 784, 786

(Tex.App.—Houston [14th Dist.] 1994, no pet.) (citing *Romero v. State,* 800 S.W.2d at 543).

Not every encounter between an officer and a citizen invokes the protection of the Fourth Amendment because police officers, like anyone else, may ask questions of their fellow citizens. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995) (citing *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983)); *White v. State,* 846 S.W.2d 427, 429 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Therefore, to address appellant's argument, we must first determine whether the interaction between appellant and Officer Young constituted a detention or merely an encounter. *See Francis v. State,* 922 S.W.2d 176, 178 (Tex. Crim.App.1996). While arrests and detentions constitute seizures which implicate varying degrees of constitutional protection, encounters involve mutually consensual contacts between officers and citizens which do not require an objective justification because "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy...." *Id.* at 178 (quoting *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877–78, 64 L.Ed.2d 497 (1980)). A seizure occurs only if a reasonable person would believe he was not free to leave, and that person has actually yielded to the officer's show of authority. *California v. Hodari, D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

Investigative detentions, on the other hand, are seizures because they involve a greater restraint on an individual's liberty and, as such, are subject to review under state and federal constitutional principles. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879–80; *Johnson,* 912 S.W.2d at 235. Only when questioning becomes a detention, however brief, must it be supported by reasonable suspicion under the Fourth Amendment. *Peterson,* 857 S.W.2d at 930. To justify a temporary detention, specific articulable facts must create a reasonable suspicion that,

in light of the officer's experience and knowledge and other inferences from the facts, some activity out of the ordinary is occurring or has occurred which warrants further investigation, the detained person is connected to the unusual activity, and the activity is related to a crime. *Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App.1986). It is not unusual for a single contact between an officer and a citizen to span the range of these categories, beginning as an encounter and concluding in the citizen's detention or arrest. *Francis,* 922 S.W.2d at 178. There is no per se rule as to when police questioning amounts to a detention. Each case must be decided by examining the totality of the circumstances surrounding the encounter. *Peterson,* 857 S.W.2d at 930 (citations omitted).

Appellant claims he was unlawfully detained upon his first contact with Officer Young because he "immediately identified himself as an officer then pulled his gun ... and yelled 'freeze.'" The State claims the initial encounter between the officers and appellant did not rise to the level of a detention. Both appellant and the State rely upon the same portion of Officer Young's testimony:

Q: Okay. Tell us what you saw with regard to Mr. Smith.

A: Mr. Smith—as he was walking toward me, he had his hand in the front of his pants, towards the belt buckle area.

Q: Okay. Did you see anything at that point?

A: Not at that point, no.

Q: Okay. Then what happened?

A: Mr. Smith—I identified myself to him as being T.A.B.C. and a State police officer and that I needed to see some identification.

Q: What did the defendant do next?

A: Mr. Smith became fairly nervous. Actually he was looking back and forth towards me and back towards his— the other two gentleman that was with him. At that time he started sidestepping to my right—which would have been to his left.

Q: Okay. Then what did he do?

A: Okay. As he was sidestepping—there was a short display rack that was sitting—that would have been between us; and once he got behind it, I could see the shoulder—his shoulder action seemed like he was trying to pull something out. His hands were still in front of him like this (indicating). He was trying to—appeared to be trying to pull something out of the front of his pants. I sidestepped to the side of the display counter.

Q: And then what happened?

A: At that time—

Q: What did you observe?

A: I observed a pistol that Mr. Smith had in his right hand. He was using his left hand to try to cover up the majority of the gun, also.

. . . .

A: At that time I did pull my service revolver, an automatic weapon, and ordered Mr. Smith to freeze.

Officer Young's initial request for identification was not overly intrusive and standing alone did not turn the encounter into a detention. An officer is allowed to ask a citizen for identification without implicating the Fourth Amendment. *See, e.g., Holladay v. State,* 805 S.W.2d 464, 466 (Tex.Crim.App. 1991); *White,* 846 S.W.2d at 430. It was not until appellant moved behind a display counter, and Young looked over and saw he had a gun, that the officer shouted for appellant to "freeze." Only at this point was appellant detained. Officer Young had reasonable suspicion to believe that appellant had committed or was about to commit a crime, namely possession of a firearm in an establishment that sells alcoholic beverages. Consequently, Young had reasonable suspicion to detain appellant, and the trial court did not err in denying appellant's motion to suppress. *Holladay,* 805 S.W.2d at 472.

Appellant's third point of error is overruled.

We modify the judgment of the trial court to delete the affirmative deadly weapon finding; in all other respects the judgment is affirmed.